UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

NANCY DICKERSON, Conservator for )
Sandra Robinson )
 )
v. ) No. 2:00-CV-405
 )
ROBERT A. ROSSER, M.D. )

**MEMORANDUM AND ORDER**

This is a medical malpractice action originally filed against a number of healthcare providers. It was alleged that the plaintiff's ward, Sandra Robinson, suffered a catastrophic post-surgery injury as a result of the combined negligence of the original defendants, resulting in the total and permanent disability of Ms. Robinson. Ultimately, this Court granted summary judgment to the defendants, dismissing plaintiff's suit. The plaintiff appealed to the Sixth Circuit Court of Appeals, and that Court reversed this Court's judgment with respect to Dr. Rosser only. Thus, Dr. Rosser was the sole defendant in a suit potentially involving millions of dollars in damages.

Dr. Rosser ultimately filed a second motion for summary judgment based on a lack of causation. Prior to any ruling by this Court on that motion for summary judgment, the Court directed that the plaintiff and the defendant Rosser submit the matter for mediation. The path of mediation was somewhat long and tortuous, but it ultimately proved successful; Dr. Rosser and his insurance carrier agreed to pay

$900,000 in full settlement of plaintiff's claim against Dr. Rosser.

Normally, a stipulation of dismissal would have been entered by this time but, not surprisingly in a case of this type, there are loose ends to tie up. The Commonwealth of Virginia, through its Department of Medical Assistance Services, made payments through its Medicaid program to healthcare providers that rendered medical services to Ms. Robinson. The amount of the submitted billings were slightly in excess of $177,000, but, because of the mandated Medicaid discounts, the Department of Medical Assistance Services paid only $111,844.92. Pursuant to Virginia Code Ann. § 8.01-66.9, the Commonwealth of Virginia has asserted a lien in the amount of $111,842.92 against the settlement proceeds:

> Whenever any person sustains personal injuries and receives treatment in any hospital . . . or receives medical attention or treatment from any physician . . . in this Commonwealth . . . which is paid for pursuant to the Virginia Medical Assistance Services . . . , the Commonwealth shall have a lien for the total amount paid pursuant to such program . . . , on the claim of such injured person or of his personal representative against the person, firm, or corporation who is alleged to have caused such injuries.
>
> . . . .
>
> The court in which a suit by an injured person or his personal representative has been filed against the person, firm or corporation alleged to have caused such injuries . . . , may, upon motion or petition by the injured person, his personal representative or his attorney, . . . reduce the amount of the liens and apportion the recovery, whether by verdict or negotiated settlement, between the plaintiff, the plaintiff's attorney, and the Commonwealth . . . as the equities of the case may appear . . . .

Plaintiff has filed a motion pursuant to the last paragraph of the above-quoted

statute to reduce the amount of the Commonwealth's lien [Doc. 287]. Specifically, plaintiff suggests that the equities require that the Commonwealth's lien should be reduced to $2500.

The Commonwealth of Virginia, on the other hand, proposes that the amount of its lien should not be reduced and, if the equities suggest that plaintiff's ward should receive more money from the settlement, plaintiff's counsel's fee should be reduced.

A hearing was held on December 12, 2005.

Plaintiff's counsel's fee is $300,000; he incurred $40,000 in litigation expenses.

As far as the "equities" are concerned, none of these parties are lacking. As far as Ms. Robinson is concerned, her injuries were catastrophic. She is totally and permanently disabled, and she cannot feed and bathe herself or otherwise tend to the most mundane of tasks. She is confined to a nursing home and of a necessity will be for the rest of her life. Her future medical expenses are measured in the millions of dollars. And the value of her health and independence is incalculable; it safely can be said that Ms. Robinson would not willingly accept the condition in which she now finds herself even if she should be offered the gross national product of the United States.

As far as plaintiff's attorneys are concerned, their contract with plaintiff called for a contingent fee of forty percent of the gross proceeds of any recovery, plus reimbursement for any litigation costs. The contingency fee speaks for itself: no recovery, no fee. And plaintiff's attorneys, especially Mr. McAfee, expended untold hours simply getting this case to the point it could be submitted to trial. He was

3

Case 2:00-cv-00405   Document 293   Filed 12/13/05   Page 3 of 7   PageID #: 14

required to pursue an appeal to the Sixth Circuit Court of Appeals, and thereafter resist Dr. Rosser's petition for the writ of certiorari to the United States Supreme Court. A myriad of pretrial depositions were taken. Mr. McAfee incurred expenses of approximately $40,000, and the Commonwealth of Virginia acknowledges that those incurred expenses were reasonable. Although Ms. Robinson agreed to reimburse Mr. McAfee for those litigation expenses, in reality it was an empty gesture since Ms. Robinson did not have any assets with which to pay those expenses. Thus, absent a recovery from the lawsuit, Mr. McAfee very likely would have to absorb those litigation costs, meaning that he not only would have lost untold hours expended on the case, he also would have lost $40,000 in out-of-pocket expenses. Further, to state the obvious, there would be no fund against which the Commonwealth of Virginia could assert a lien but for the efforts of Mr. McAfee.

Lastly, the Commonwealth of Virginia has some equity on its side. Lest it be overlooked, it should be recalled that the "Commonwealth of Virginia" is but another way of saying the *taxpayers* of Virginia. It is the taxpayers of Virginia who paid $111,844 in medical expenses incurred by Ms. Robinson. Moreover, because these payments were Medicaid, Ms. Robinson's medical expenses were reduced by $66,000.

It falls to the lot of this Court to attempt to balance these equities. At the outset, it is noted that there is no good answer to any of this, only a succession of poor solutions, some of which are worse than others.

Even if Ms. Robinson were to receive the entire $900,000, that would be only

4

an infinitesimal fraction of her true damages. On the other hand, Dr. Rosser's liability was highly tenuous. It is obvious that Dr. Rosser and his insurance carrier's decision to settle was a pragmatic one, based upon the fear that the jury would render a verdict based on sympathy, rather than the facts. It is one of the judicial system's dirty little secrets that juries sometimes do just that, the judge's instructions notwithstanding. Arrayed against the undeniable fact that this was a compromise settlement in the extreme sense of that term, is the fact that the proposed settlement of $900,000 came about only because of Attorney McAfee's dogged determination and persistence, and his willingness to accept the real risk of losing a great deal of time and money.

The Commonwealth of Virginia, through its Medicaid program, contributed nothing to the proposed settlement, and it took no risks. On the other hand, the Commonwealth of Virginia has paid, and will continue to pay, medical expenses and nursing home confinement costs for the rest of Ms. Robinson's life, which could be lengthy, surprisingly enough.

Reducing Mr. McAfee's contractual fee is not a viable option. He ran the very real risk of wasting hundreds upon hundreds of hours of work, as well as losing $40,000 in necessary litigation expenses. Unlike the contingency fees in some cases, this one truly was earned, every cent of it. Against all odds, Mr. McAfee generated a sum of money from which both Ms. Robinson and the Commonwealth of Virginia will benefit, albeit slightly. Moreover, he *has* reduced his fee; forty percent of $900,000 is $360,000. Thus, although Medicaid "saved" Ms. Robinson $66,000, Mr. McAfee

5

"saved" her $60,000 by claiming only $300,000 as his fee.

The Court believes that simple fairness dictates that the Commonwealth of Virginia share pro-ratably the burden of Ms. Robinson's attorneys' fees and costs. The settlement, after payment of attorneys' fees and expenses, will be utterly inadequate to recompense Ms. Robinson for her injuries and future costs; for that matter, so would the $900,000 without any reduction. But, by the same token, the settlement reduced by attorneys' fees and costs also will be inadequate to reimburse the Commonwealth of Virginia for the medical expenses it previously has paid, and for those it undoubtedly will pay in the future. Thus, it seems fair that the burden for attorneys' fees and litigation costs should fall on both Ms. Robinson and the Commonwealth of Virginia on a pro-rata basis. Specifically, the Commonwealth of Virginia should be obligated for that percentage of total fees and costs that is equal to the percentage of its lien as to the total settlement proceeds. Stated mathematically, Virginia's lien is to the total recovery as Virginia's share of fees/costs is to the total fees/costs.

$$\frac{\text{Lien}}{\text{Total recovery}} : \frac{\text{VA's Share of Fees/Costs}}{\text{Actual Fees/Costs}}$$

$$\frac{\$111,844}{\$900,000} : \frac{X}{\$340,000}$$

$$\$900,000 \, (x) = (\$111,844)(\$340,000)$$

$$\$900,000 \, (x) = \$38,026,960,000$$

$$(x) = \frac{\$38,026,960,000}{\$900,000}$$

$$(x) = \$42,252.18$$

6

Thus, the Commonwealth's fair share of attorney fees and expenses is $42,252.18; this amount should be deducted from the total amount of its lien, $111,844. The figure that remains, $68,592, is the Commonwealth's *net* lien.

In accordance with the foregoing, it is ordered that pursuant to Va. Code Ann. § 8.01-66.9, the Commonwealth's lien is reduced to $68,692.

SO ORDERED:

                                              s/ Dennis H. Inman
                                        United States Magistrate Judge